UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

BRUCE FRISKCO,

              Petitioner,

   -against-                                  MEMORANDUM & ORDER

R.K. WOODS, SUPERINTENDENT,         06-CV-5396 (NGG) (RER)
UPSTATE CORRECTIONAL FACILITY,

              Respondent.
----------------------------------------------------------X

GARAUFIS, United States District Judge:

*Pro se* petitioner Bruce Friskco ("Friskco") brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently incarcerated at Midstate Correctional Facility in Marcy, New York. Friskco alleges that he is being held in violation of his federal constitutional rights and is seeking to overturn his April 28, 2004 conviction for Robbery in the second degree (New York Penal Law ("Penal Law") § 160.10(1)). For the reasons set forth below, Friskco's petition is DENIED.

I.     Background

    A.     Factual Background and Trial

Friskco and co-defendant Javon Aponte ("Aponte") were charged with second-degree robbery and resisting arrest, stemming from their involvement in an incident with Pedro Ruiz ("Ruiz") on April 22, 2003. At the trial, Ruiz, New York Police Officer Michael Patterson ("Patterson"), New York Police Officer David Zimmerly ("Zimmerly"), and Aponte testified.

        1.     Ruiz's Testimony

Ruiz testified that, on April 22, 2003, he was riding the 7 train towards his home in

Queens. (Trial Transcript ("Tr.") at 677.) He boarded the train at Grand Central Station, and saw Friskco and Aponte enter the train as well. (Id.) Friskco and Aponte entered the train "loudly, like they were laughing and acting crazy" (id. at 678), and, while on the train, they were "disrespecting the ladies" and sticking up their middle finger to anyone who did not pay attention to them (id. at 680).

While riding the train, Ruiz was wearing a "fourteen carat gold diamond" chain around his neck, with a fourteen-carat gold medallion of the cartoon character "Pinkie" (from the show "Pinkie and the Brain") hanging from the chain. (Id. at 674.) Ruiz had purchased the chain and medallion on March 3, 2003 for approximately $580. (Id. at 676.)

Ruiz was sitting in the seat next to the conductor (id. at 677) when he noticed Friskco pointing to his chain and walking with Aponte towards him (id at 682). Friskco said he liked the chain and that if "he wants, he will take it." (Id.) Ruiz's normal stop on the train was 82nd Street, but after Friskco and Aponte approached him, he decided to exit at 74th Street because he knew police officers would be there. (Id. at 683.) When Ruiz stood up to exit the train, Aponte snatched his chain and ran off the train. (Id. at 683-84.) As Ruiz attempted to exit the train, Friskco grabbed him and tried to keep him from exiting the train. (Id. at 684.) Ruiz, however, was able to exit the train and pursue Aponte. (Id. at 684.) He caught up with Aponte on the stairway landing and began fighting with him. (Id.) Soon after, Friskco made his way to the stairway landing and joined Aponte's fight with Ruiz. (Id.) After Ruiz screamed for help, two plain-clothed police officers came to the scene of the fight. (Id. at 685.) Friskco and Aponte ran off, and Ruiz told the police officers that he had just been robbed. (Id. at 685-86.) At that point, Ruiz, alongside the police officers, chased Friskco and Aponte through the train station. (Id. at

687.) During the chase, Aponte threw a railing to the ground, causing one of the police officers to fall and injure his leg. (Id. at 687-88.)

When the chase reached the platform of the E train, Ruiz observed Aponte "walking like a regular . . . like he didn't do nothing" and Friskco boarding an E train. (Id. at 689-90.) Ruiz first pointed out Aponte to one of the police officers and then pointed out Friskco, who was sitting on the train, to another police officer. (Id. at 690.) Ruiz was able to keep the doors of Friskco's train from closing, allowing one of the officers to attempt to remove Friskco from the train. (Id. at 691-92.) Friskco did not immediately comply with the officer's request to leave the train, and a struggle ensued before the officer was able to remove Friskco from the train. (Id. at 692.) After Ruiz identified Friskco and Aponte as the ones who stole his chain, they were arrested. (Id.) Ruiz's chain was never found. (Id. at 706-07.)

### 2. Patterson's Testimony

Patterson testified that on April 22, 2003, he and his partner, an Officer Quinones ("Quinones"), were assigned as plain-clothed officers to the summons team for the 7 train, at the 74th Street and Broadway stop. (Id. at 832-33.) At approximately 9:00 p.m., his attention was drawn to three individuals on one of the station's stairways. (Id. at 837.) As Patterson approached the three individuals, he identified himself as a police officer, and Ruiz responded that he had been robbed. (Id.) Patterson then observed the two other individuals attempting to flee, so he, along with Ruiz, Quinones, and an Officer Jurgenson ("Jurgenson"), who was in full uniform, chased after them. (Id. at 838, 843.)

During the chase, Patterson placed a call for backup over the police radio, describing the two individuals he was chasing. (Id. at 838.) Later during the chase, a barrier was thrown down

3

that caused Patterson to fall, but he was able to get back up and continue in pursuit. (Id. at 842.)

When the pursuit reached another platform, Patterson observed one of the individuals he was chasing nonchalantly walking along the platform. (Id.) He instructed Zimmerly, who was standing at that platform, to arrest the individual. (Id.) Patterson then saw the second individual sitting on a train, the doors of which were being held open by Ruiz. (Id. at 844.) At that time, Quinones entered the train and successfully brought the individual back onto the platform. (Id. at 844-45.) Since the individual was not cooperating with Quinones, Patterson assisted in effectuating the arrest. (Id. at 845.) Patterson then identified Friskco and Aponte as the individuals he was chasing on April 22, 2003. (Id. at 846-47.)

### 3. Zimmerly's Testimony

Zimmerly testified that on the night of April 22, 2003, he was assigned as a plain-clothed officer to the 7 train at Roosevelt Avenue. (Id. at 927.) At approximately 9:00 p.m., Zimmerly heard a broadcast from Patterson on his police radio describing two individuals Patterson was chasing. (Id. at 928-29.) Zimmerly walked through the station looking for individuals who fit the description. (Id. at 929-30.) Soon after, Zimmerly observed two individuals running past him, with several officers and Ruiz following behind. (Id. at 930.) Zimmerly made his way to the underground portion of the subway, where Patterson pointed to Aponte and told Zimmerly to arrest him. (Id. at 932, 934.) As Zimmerly was attempting to handcuff Aponte, Aponte flailed his arms and refused to be handcuffed. (Id. at 934.) Zimmerly then observed Quinones take Friskco off the train and struggle with, but ultimately, arrest Friskco. (Id. at 936-38.)

### 4. Aponte's Testimony

Aponte testified that at approximately 8:40 p.m. on April 22, 2003, he boarded the 7 train

4

at the Queensboro Plaza station. (Id. at 1016-17.) Aponte was standing on the crowded train, holding onto a pole. (Id. at 1018.) Aponte intended to get off at 74th Street (id. at 1019), and at 52nd Street, he saw Friskco walking through the cars of the train (id. at 1020). Aponte had met Friskco the day before (id.), and the two men exchanged brief greetings as Friskco walked by Aponte (id. at 1021).

As the train was pulling into the 74th Street station, the train "jerked," causing Aponte to stumble backwards and step on Ruiz's foot, who was seated behind him. (Id. at 1024.) Ruiz then pushed Aponte, and Aponte responded by shoving him. (Id. at 1025.) This led to a fight that spilled over onto the train station platform. (Id. at 1025-27.) Some nearby commuters were eventually able to break up the fight. (Id. at 1027.)

As Aponte started to walk down the stairs towards the E train, Ruiz jumped over the bannister and landed on Aponte's back. (Id. at 1030.) The two started fighting again, and the same commuters broke up this fight as well. (Id.) Aponte then proceeded down to the E train platform. (Id. at 1031-33.) On the platform, Aponte observed Ruiz pointing at him, telling a police officer that Aponte had robbed him. (Id. at 1033.) The police officer proceeded to push Aponte up against a wall, search him, and place him under arrest. (Id. at 1034.) Aponte told the police officer he simply fought with Ruiz but did not steal anything. (Id. at 1035.)

### B. Procedural Background

#### 1. Trial

On November 21, 2003, the jury convicted Friskco of second-degree robbery but acquitted him of resisting arrest. (Id. at 1270-71.) On April 28, 2004, Friskco was sentenced to a determinate prison term of seven years. (Sentencing Transcript at 16.)

5

## 2. Direct Appeal

In October 2005, Friskco, through counsel, appealed his conviction to the New York State Appellate Division, Second Department. On appeal, Friskco argued: (1) that the trial court denied him a trial by a jury of his choice when the court discharged a juror as unavailable, despite the juror's assertions that she could fully participate in that day's work; and (2) that there was prosecutorial misconduct during the prosecution's cross examination and summation.

On April 18, 2006, the Appellate Division affirmed Friskco's conviction. People v. Friskco, 28 A.D.3d 676 (2d Dept. 2006). As to Friskco's first argument, the court held the trial court properly exercised its discretion to discharge a juror after conducting a "reasonably thorough inquiry" under New York Criminal Procedure Law ("C.P.L.") § 270.35(2)(a). Id. The court held Friskco's second claim to be "unpreserved for appellate review . . . and, in any event, without merit." Id. (internal citations omitted).

On May 9, 2006, Friskco sought leave to appeal to the New York Court of Appeals, and on July 12, 2006, the New York Court of Appeals denied the application. People v. Friskco, 854 N.E.2d 1282 (N.Y. Ct. App. 2006).

On September 28, 2006 Friskco filed a *pro se* habeas corpus petition. Since Friskco's application for appeal to the New York Court of Appeals was denied on July 12, 2006, and the date to seek a writ of certiorari from the Supreme Court expired ninety days later, his habeas corpus petition was timely. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001); 28 U.S.C. § 2244(d)(1)(A) (setting forth a one-year period of limitations that runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").

6

## II. Discussion

### A. Standard of Review

The standard of review for habeas corpus petitions filed by state prisoners is set forth in 28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). For claims that have been fully adjudicated on the merits in state court, a petitioner must show that the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary" to clearly established federal law as set forth by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Further, a state court decision is an "unreasonable application" of the law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

Accordingly, this court cannot grant the petitioner's writ if it "concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Second Circuit has warned, however, that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone,

7

221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

**B.     Friskco's Claims**

   **2.     Dismissal of a Sworn Juror**

      **i.     Facts Surrounding Dismissal of Juror Number Eight**

On Friday, November 21, 2003, right before the prosecutor was to deliver his summation, the trial judge received a note from juror number eight, stating, "I have an emergency in Florida, I must leave today. My grandson needs to have surgery." (Tr. at 1179.) The judge called the juror into the court and asked her a series of questions in order to determine her availability for the remainder of the trial.

The juror told the judge that she already booked a flight for 9:30 p.m. that night, but "[i]f I were to get out of here at a reasonable time, I don't mind staying. . . ." (Id. at 1181.) The judge then asked the juror if she were to stay the rest of the day whether her mind would be focused on the trial, or, and understandably so, on her grandson's situation. (Id.) The juror responded, "I would think I could do it, but I can't tell you a hundred percent that my mind would not wander." (Id.) Upon being questioned, the juror stated she would not "have an eye on the clock" during deliberations and could work the entire day and fully take part in deliberations. (Id.) The juror further stated she did not intend on returning to New York by Monday and that her intentions were to be in Florida for a "period of time." (Id. at 1182.)

When the juror left, counsel for all parties asked the court not to dismiss the juror. (Id. at 1182-84.) The court, however, noted that it was unclear how long deliberations would last and,

once deliberations started, a juror could be replaced only upon consent of the defendants.[1] Thus, the court held the "prudent thing to do under the circumstances [wa]s to substitute an alternate at th[at] point." (Id. at 1183, 1186.)

### ii. Analysis

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also 28 U.S.C. § 2241. "Federal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67. The trial court based its determination to dismiss the juror on C.P.L. § 270.35(1) and case law in that jurisdiction. Since Friskco's claim involves only the application of state law, there is no federal constitutional basis for habeas corpus review. See Wheeler v. Phillips, 05-CV-4399, 2006 WL 2357973, at *6-9 (E.D.N.Y. Aug. 15, 2006) (holding that the replacement of two jurors with selected alternate jurors does not implicate constitutional concerns); Jones v. Greiner, 01-CV-5276, 2003 WL 22284142, at *13 (E.D.N.Y. Aug. 18, 2003) ("The decision to replace two jurors who would have delayed the trial does not raise a federal constitutional claim"). Thus, I deny Friskco's application regarding this claim.

Even though, given the above, the court need not reach a determination of Friskco's claim on the merits, the court furthermore finds Friskco's arguments to lack merit.

The decision to dismiss a juror is reversed only in cases where the court's discretion amounts to "clear abuse." United States v. Nelson, 277 F.3d 164, 202 (2d Cir. 2002). Moreover, the state court is entitled to a presumption of correctness when making any determinations of

---

[1] Both defendants stated they would not consent ahead of time to a substitute juror and they would make a decision only if the situation arose. (Tr. at 1184.)

fact about dismissing a juror. See Marshall v. Lonberger, 459 U.S. 422, 432 (1983). "The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In the case at bar, Friskco provided no evidence, let alone clear and convincing evidence, to refute the state court's factual findings. While it is true that both sides wanted to retain the dismissed juror, the juror admitted that her mind might wander during the course of the day and that she was not sure when she would be able to return to New York. Therefore, it cannot be said that the trial court "clearly abused" its discretion, and since Aponte failed to rebut the trial court's presumption of correctness with "clear and convincing evidence," I cannot upset the trial court's determination.

Furthermore, for the dismissal of a juror to be considered an error, a petitioner must demonstrate prejudice resulted in the dismissal of the juror. Wray v. Johnson, 202 F.3d 515, 525 (2d Cir. 2000); Cabassa v. Filion, 03-CV-2920, 2004 WL 1367503, at *7 (S.D.N.Y. June 16, 2004). Friskco has not shown any evidence of prejudice as the result of the dismissal of the juror. Indeed, Friskco did not receive an entirely unfavorable result, since the jury acquitted him of resisting arrest. Friskco's claim of error based on the juror's dismissal is therefore both procedurally barred and meritless.

### 2. Prosecutorial Misconduct

Friskco adopted Aponte's Appellate Division claim of prosecutorial misconduct. The claim was premised on alleged misconduct during the prosecution's cross examination of Aponte and in the prosecutor's related summation comments. The Appellate Division held that claim "unpreserved for appellate review . . . and, in any event, without merit." Friskco, 28 A.D.3d at

676. The Appellate Division grounded its decision, in part, on People v. Aponte, 28 A.D.3d 672 (2d Dept. 2006), noting that Aponte's prosecutorial misconduct claim was unpreserved "since the defendant made only general objections and did not request curative instructions when objections were sustained." See also C.P.L. § 470.05(2) (referring to this proposition as the "contemporaneous objection rule").

It is well established that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 2000); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("where a state says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved").

The procedural bar doctrine, however, applies only when the state procedural law is "firmly established and regularly followed state practice." James v. Kentucky, 466 U.S. 341, 348 (1984). The rule the Appellate Division based its decision on, C.P.L. § 470.05(2), the "contemporaneous objection rule," has been recognized as a firmly established and regularly followed rule. See Simpson v. Portuondo, 01-CV-8744, 2002 WL 31045862, at *4 (S.D.N.Y. June 4, 2002) ("New York's contemporaneous objection rule is firmly established and regularly followed by state courts, as the Second Circuit has long recognized"). Therefore, Friskco's claim of prosecutorial misconduct is procedurally barred from habeas corpus review.

Although this claim is procedurally barred, Friskco could overcome the procedural bar if he can either (1) demonstrate that the failure to consider the federal claim will result in a fundamental miscarriage of justice, specifically the conviction of an actually innocent person, or

11

(2) show good cause for the default and that he will be prejudiced by non-review of the claim. Harris v. Reed, 489 U.S. 255, 262 (1989). Friskco has made no such showing; he has neither shown that he is actually innocent, nor has he shown good cause for the default and prejudice therefrom.

Habeas relief is warranted for prosecutorial misconduct only where the prosecutor's comments "constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). In order to be successful, the petitioner must demonstrate that he "suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). "Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Friskco has adopted Aponte's prosecutorial misconduct claim but fails to offer any proof as to how the alleged misconduct prejudiced him. In his habeas petition, Friskco states that since "Aponte was the sole defense witness [] the error therefore affected [Friskco] as well." (Petitioner's Habeas Corpus Application at 7.) Friskco, however, offers no explanation as to how he was affected by the alleged misconduct and therefore falls well short of proving that an "egregious" act was done to him.

This is especially true in light of the specific instructions the trial judge gave to the jury. The judge instructed the jury to "render a verdict separately and specifically with respect to each defendant solely on the basis of evidence that is applicable to each defendant if any." (Tr. at 1220.) Since the jury rendered Friskco's verdict solely on the evidence applicable to him, any

misconduct affecting Aponte would not have prejudiced Friskco. Friskco's claim of prosecutorial misconduct is therefore both procedurally barred and meritless.

### III. Conclusion

For the reasons discussed above, Friskco's claims do not warrant habeas relief under 28 U.S.C. § 2254. Friskco's petition for a writ of habeas corpus is therefore DENIED. The Clerk of Court is directed to close this case and serve a copy of this Memorandum and Order on the *pro se* Petitioner.

SO ORDERED

Dated: August 9, 2007
Brooklyn, New York

/signed/
NICHOLAS G. GARAUFIS
United States District Judge